## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBINHOOD DERIVATIVES, LLC<br><br>         *Plaintiff*,<br><br>v.<br><br>MARY JO FLAHERTY, in her official capacity as Interim Director of the New Jersey Division of Gaming Enforcement, et al.,<br><br><br>         *Defendants*. | Civil Action No. 1:25-cv-14723 |

### DECLARATION OF JAMES B. MACKENZIE IN SUPPORT OF PLAINTIFF ROBINHOOD'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, James B. Mackenzie, declare as follows:

1.      I am Vice President and General Manager of Futures and International at Robinhood Markets, Inc. ("Robinhood Markets") and President of Robinhood Derivatives, LLC ("Robinhood"). My job responsibilities include ensuring that the firm, its personnel and its clients adhere to all applicable National Futures Association and Commodity Futures Trading Commission ("CFTC") regulations to maintain a compliant futures and swaps business. I submit this declaration in support of Robinhood's Motion for a Temporary Restraining Order and Preliminary Injunction. The contents of this declaration are based on my personal knowledge. If called as a witness, I could and would competently testify thereto.

Docusign Envelope ID: 8936D422-92BC-435E-876C-CDB4BC4959AD

**Robinhood's Offering of Kalshi's Event Contracts**

2.      Robinhood Markets is the parent company of a number of financial-services subsidiaries, including Robinhood, which are democratizing finance by removing barriers to access to financial markets, including by offering zero-commission stock trading and easy-to-use mobile and web applications.  With a commitment to offering low fees, an intuitive mobile experience and powerful tools, Robinhood Markets and its subsidiaries empower everyday investors to navigate financial markets safely and efficiently.

3.      Robinhood is registered with the CFTC as a futures commission merchant ("FCM").  Robinhood was first approved by the CFTC as an FCM in 2010 under the name Marex North America LLC and has since maintained its registration.

4.      Robinhood began offering some limited event contract trading starting in October 2024.  The only event contracts Robinhood offered in 2024 were related to the outcome of the U.S. presidential election; those contracts were not traded on KalshiEX, LLC's ("Kalshi") exchange.  On March 17, 2025, Robinhood launched its prediction markets hub through which its customers can place orders for event contracts.  Robinhood currently works exclusively with Kalshi to offer trading in event contracts to its customers.

5.      Robinhood intermediates event contract trades on Kalshi's CFTC-designated contract market.  This means that Robinhood customers place buy and sell orders through their Robinhood accounts (accessed through Robinhood's mobile application), and Robinhood submits those orders to Kalshi's exchange for execution.  While Robinhood customers are placing orders for event contract trades in their Robinhood accounts, the *trades* themselves are executed on Kalshi's exchange.  This is no different from a Kalshi customer placing an order for an event contract trade through her Kalshi account, which is then executed on Kalshi's exchange; here, the

Docusign Envelope ID: 8936D432-92BC-4285-876C-CDB4BC4959AD

user interface is Robinhood's instead of Kalshi's, which is convenient for Robinhood customers, but does not affect the way in which trades are executed on Kalshi's exchange.

6.    Related to this relationship, Robinhood has entered into two agreements with Kalshi, an FCM Membership Agreement with KalshiEX, LLC and an FCM Clearing Member Agreement with Kalshi Klear LLC, both dated January 28, 2025.  True and correct copies of these agreements are attached as Exhibits A and B.  These agreements obligate Robinhood to ensure access to Kalshi's platform is secure and in compliance with all applicable laws, including the Commodity Exchange Act ("CEA") and CFTC's regulations.  These agreements also require Robinhood to abide by Kalshi's rules.  True and correct copies of these rules are attached as Exhibits C and D.

**The Cease-and-Desist Letter**

7.    On March 27, 2025, the New Jersey Division of Gaming Enforcement ("Division") sent Vladimir Tenev, Robinhood Markets' Chief Executive Officer, a cease-and-desist letter threatening to bring a legal action to prohibit sports-related event contract trading on Robinhood's platform by New Jersey customers.  A true and correct copy of this letter is attached as Exhibit E.

8.    The Division asserted that Robinhood was "listing unauthorized sports wagers for individuals located within the State of New Jersey" without a license in violation of the New Jersey Sports Wagering Act, citing N.J.S.A. § 5:12A-11.  It further asserted that Robinhood was "offering unauthorized sports wagering to New Jersey residents on collegiate sporting events occurring in New Jersey in violation of the New Jersey Constitution," citing N.J. Const. art. IV, § 7, ¶ 2(D). The Division demanded that Robinhood "immediately cease and desist from offering any form of sports wagering to New Jersey residents and void any such wagers already placed."  The Division reserved "the right to pursue any appropriate sanctions" if Kalshi failed to comply with the cease-and-desist letter.  The Division further stated that failure to comply with the cease-and-desist letter

by 11:59 pm on March 28, 2025 "will result in the Division taking further enforcement actions, which may include any measures available under New Jersey law."

9.     Though Robinhood maintains that its conduct did not violate any state laws, Robinhood nevertheless paused allowing New Jersey residents to enter new positions for sports-related event contracts on March 27, 2025 by implementing certain measures, including a "position closing only" restriction on Robinhood accounts with a current New Jersey address.  This restriction also operated to prevent any new Robinhood account with a New Jersey address from opening any positions for sports-related event contracts.  Robinhood informed the Division of these actions via letter on March 28, 2025.  A true and correct copy of this letter is attached as Exhibit F.

10.     From March 27 to August 17, 2025, New Jersey residents were unable to enter new positions for sports-related event contracts via their Robinhood accounts.

11.     Robinhood restored access to sports-related event contract trading for New Jersey residents on August 18, 2025.

**Harm Resulting from Re-Entering New Jersey Sports-Related Event Contract Trading**

12.     Now that Robinhood is allowing New Jersey residents to take new positions on sports-related event contracts again, since 8:00 pm ET on August 18, 2025, Robinhood's New Jersey customers have entered at least 1,850 sports-related contracts.  Some of these contracts are still open.

13.     In light of these open contracts and the Division's letter, Robinhood and its officers face the extraordinary harm of potential civil liability and criminal prosecution.  The Division's letter makes it clear that this threat of prosecution is actual and imminent.

14.     Robinhood would also suffer damage to its reputation if the Division were to attempt to enforce against Robinhood the New Jersey laws it cited in its cease-and-desist letter.  Legal action by a state regulator would erode consumer confidence in Robinhood; it would affect customers'

perception of Robinhood as a whole, including all of its services and not just those event contract-related services at issue.  This would likely cause customers to use fewer Robinhood services or to leave Robinhood altogether and seek out a competitor or other alternative source of such services, causing Robinhood substantial economic losses.  Damage to Robinhood's reputation cannot be easily or quickly remedied, even if Robinhood were to prevail in this litigation.  Criminal prosecution of Robinhood could also have a negative effect on Robinhood's FCM status and could harm Robinhood's and/or its affiliates' status with other federal, state and international regulators.

15.    Even if the Division were to delay or abandon its enforcement efforts, just the threat of enforcement is enough to diminish activity on the Robinhood platform and tarnish Robinhood's reputation.  It would be a dark cloud over Robinhood's activities in the state and would cause substantial harm to Robinhood's business.

**Harm Caused by Robinhood's Compliance**

16.    Robinhood could not have avoided harm by continuing to comply with the Division's cease-and-desist demand.  Had it continued to comply, Robinhood would have been forced to continue to forgo significant business in New Jersey, resulting in loss of revenue.

17.    Robinhood has about 48,000 customers with New Jersey addresses.  In all, Robinhood's New Jersey customers have traded about 30.8 million event contracts.  A substantial proportion of all the event contracts traded by all Robinhood customers are sports-related event contracts.  Robinhood has had to forgo all profit that would have been generated from sports-related event contract trading by its New Jersey customers from March 27 through August 17, 2025.

18.    Continuing to prevent New Jersey residents from opening new sports-related event contract positions would also undermine customers' confidence in Robinhood and their reliance on its services.  This harm to Robinhood's business and reputation cannot be quantified.

Docusign Envelope ID: 8936D432-92BC-435F-876C-CDB4BC4959AD

19.     Robinhood's efforts to comply with the cease-and-desist demand also detracted from its ability to compete with other providers of event contracts trading in New Jersey; New Jersey residents who wanted to trade sports-related event contracts had to do so through means other than a Robinhood account, which pushed them toward Robinhood's competitors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on August 19, 2025 in Chicago, Illinois.

Signed by:

*James B. Mackenzie*

F36707FC42674A7

James B. Mackenzie